UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| EVACLARE LUMBY,<br><br>          Plaintiff,<br><br>   v.<br><br>JO ANNE B. BARNHART, Commissioner of Social Security,<br><br>          Defendant. | CASE NO.   C05-5741RBL<br><br>REPORT AND RECOMMENDATION<br><br>Noted for June 9, 2006 |

     Plaintiff, Evaclare Lumby, has brought this matter for judicial review of the denial of her application for supplemental security income ("SSI") benefits. This matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Magistrates Rule MJR 4(a)(4) and as authorized by <u>Mathews, Secretary of H.E.W. v. Weber</u>, 423 U.S. 261 (1976). After reviewing the parties' briefs and the remaining record, the undersigned submits the following Report and Recommendation for the Honorable Ronald B. Leighton's review.

## FACTUAL AND PROCEDURAL HISTORY

Plaintiff currently is fifty-nine years old.[1] Tr. 45. She has a high school equivalency diploma, three years of college education, and past work experience as a home health care provider and laundry attendant. Tr. 22, 138, 143, 196, 201.

On September 21, 1998, plaintiff filed an application for SSI benefits, alleging disability as of February 1, 1998, due to arthritis, gastrointestinal problems status post ileostomy, and depression. Tr. 21-22, 103-05, 137. Her application was denied initially and on reconsideration. Tr. 45-46, 69, 75. A hearing was held before an administrative law judge ("ALJ") on June 13, 2001, at which plaintiff, represented by counsel, appeared and testified, as did a lay witness and a vocational expert. Tr. 558-94. At the hearing, plaintiff also amended her alleged onset date of disability to September 21, 1998. Tr. 21.

On September 18, 2001, the ALJ issued a decision finding plaintiff to be not disabled, because she was capable both of performing her past relevant work and of making a vocational adjustment to other jobs existing in significant numbers in the national economy. Tr. 50-62. However, on November 5, 2003, plaintiff's request for review was granted by the Appeals Council, which remanded the matter for further administrative proceedings. Tr. 64-67.

In the meantime, plaintiff had filed a second application for SSI benefits on June 17, 2002. Tr. 21, 113. Plaintiff was determined at the initial level to be limited to light work activity and therefore disabled as of October 12, 2001, the date she attained the age of 55. Tr. 21, 68. Pursuant to the Appeals Council's remand order, a second hearing on the prior application was held before another ALJ on March 2, 2004, at which plaintiff, represented by counsel, appeared and testified, as did a medical expert and a vocational expert. Tr. 595-622.

On May 15, 2004, the second ALJ issued a decision, again determining plaintiff to be not disabled. Tr. 21-35. Specifically, the ALJ found in relevant part that the period at issue was from September 21, 1998, plaintiff's amended alleged onset date of disability, to October 12, 2001, the date on which she was determined to be disabled pursuant to her second application, and that:

(1)     at step one of the disability evaluation process, plaintiff had not engaged in substantial gainful activity during the relevant time period;

---

[1] Plaintiff's date of birth has been redacted in accordance with the General Order of the Court regarding Public Access to Electronic Case Files, pursuant to the official policy on privacy adopted by the Judicial Conference of the United States.

REPORT AND RECOMMENDATION
Page - 2

(2) at step two, plaintiff had "severe" impairments consisting of depression, a personality disorder, cervical degenerative disc disease, lumbar spine strain, and gastrointestinal disorder status post ileostomy;

(3) at step three, none of plaintiff's impairments met or equaled the criteria of any of those listed in 20 C.F.R. Part 404, Subpart P, Appendix 1;

(4) at step four, plaintiff had the residual functional capacity to perform light work with certain additional non-exertional limitations, which precluded her from performing her past relevant work; and

(5) at step five, plaintiff was capable of performing other jobs existing in significant numbers in the national economy.

Tr. 33-34. Plaintiff's request for review was denied by the Appeals Council on September 10, 2005, making the ALJ's decision the Commissioner's final decision. Tr. 11; 20 C.F.R. § 416.1481.

On November 14, 2005,[2] plaintiff filed a complaint in this Court seeking review of the ALJ's decision. (Dkt. #1-#3). Specifically, plaintiff argues that decision should be reversed and remanded for an award of benefits, or, in the alternative, for further administrative proceedings, because:

(a) the ALJ erred in evaluating the medical evidence in the record;

(b) the ALJ erred in assessing plaintiff's credibility;

(c) the ALJ erred in evaluating the opinions of plaintiff's mental health therapists;

(d) the ALJ erred in assessing plaintiff's residual functional capacity; and

(e) the ALJ erred in finding plaintiff capable of performing other work existing in significant numbers in the national economy.

The undersigned agrees the ALJ erred in evaluating the opinions of plaintiff's mental health therapists, and, thus, for that reason, in determining plaintiff to be not disabled. For the reasons set forth below, however, the undersigned recommends this matter be remanded to the Commissioner for further administrative proceedings. While plaintiff requests oral argument in this matter, the undersigned finds such argument to be unnecessary here.

---

[2] As indicated, plaintiff's complaint was filed more than sixty days after the Commissioner issued her final decision. A party may obtain judicial review of the Commissioner's final decision by commencing a civil action in federal court "within sixty days after the mailing to him of notice of such decision or within such further time as the Secretary may allow." 42 U.S.C. § 405(g); 20 C.F.R. §§ 404.981, 404.982, 416.1481, 416.1482. This "sixty-day time limit is not jurisdictional, but is instead a statute of limitation which the Secretary may waive." Banta v. Sullivan, 925 F.2d 343, 345 (9th Cir. 1991). As such, failure to file within the sixty-day time limit is an affirmative defense, which "is properly raised in a responsive pleading." Vernon v. Heckler, 811 F.2d 1274, 1278 (9th Cir. 1987) (citing Federal Rule of Civil Procedure 8(c)). Because the Commissioner failed to raise the statute of limitations as an affirmative defense in her responsive pleading, the issue is waived, and the undersigned will deal with this matter on its merits.

REPORT AND RECOMMENDATION
Page - 3

## DISCUSSION

This Court must uphold the Commissioner's determination that plaintiff is not disabled if the Commissioner applied the proper legal standard and there is substantial evidence in the record as a whole to support the decision. Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1971); Fife v. Heckler, 767 F.2d 1427, 1429 (9th Cir. 1985). It is more than a scintilla but less than a preponderance. Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975); Carr v. Sullivan, 772 F. Supp. 522, 524-25 (E.D. Wash. 1991). If the evidence admits of more than one rational interpretation, the Court must uphold the Commissioner's decision. Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984).

I.   The ALJ Properly Evaluated the Medical Evidence in the Record

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998). Where the medical evidence in the record is not conclusive, "questions of credibility and resolution of conflicts" are solely the functions of the ALJ. Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982). In such cases, "the ALJ's conclusion must be upheld." Morgan v. Commissioner of the Social Security Administration, 169 F.3d 595, 601 (9th Cir. 1999). Determining whether inconsistencies in the medical evidence "are material (or are in fact inconsistencies at all) and whether certain factors are relevant to discount" the opinions of medical experts "falls within this responsibility." Id. at 603.

In resolving questions of credibility and conflicts in the evidence, an ALJ's findings "must be supported by specific, cogent reasons." Reddick, 157 F.3d at 725. The ALJ can do this "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Id. The ALJ also may draw inferences "logically flowing from the evidence." Sample, 694 F.2d at 642. Further, the court itself may draw "specific and legitimate inferences from the ALJ's opinion." Magallanes v. Bowen, 881 F.2d 747, 755, (9th Cir. 1989).

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996). Even when a treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and

REPORT AND RECOMMENDATION
Page - 4

1  legitimate reasons that are supported by substantial evidence in the record." Id. at 830-31.  However, the
2  ALJ "need not discuss *all* evidence presented" to him or her. Vincent on Behalf of Vincent v. Heckler, 739
3  F.3d 1393, 1394-95 (9th Cir. 1984) (citation omitted) (emphasis in the original).  The ALJ must only explain
4  why "significant probative evidence has been rejected." Id.; see also Cotter v. Harris, 642 F.2d 700, 706-07
5  (3d Cir. 1981); Garfield v. Schweiker, 732 F.2d 605, 610 (7th Cir. 1984).

6        In general, more weight is given to a treating physician's opinion than to the opinions of those who
7  do not treat the claimant. Lester, 81 F.3d at 830.  On the other hand, an ALJ need not accept the opinion of
8  a treating physician, "if that opinion is brief, conclusory, and inadequately supported by clinical findings" or
9  "by the record as a whole." Batson v. Commissioner of Social Security Administration, 359 F.3d 1190,
10 1195 (9th Cir.,2004); Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002); Tonapetyan v. Halter, 242
11 F.3d 1144, 1149 (9th Cir. 2001).  An examining physician's opinion is "entitled to greater weight than the
12 opinion of a nonexamining physician." Lester, 81 F.3d at 830-31.  A nonexamining physician's opinion may
13 constitute substantial evidence if "it is consistent with other independent evidence in the record." Id. at 830-
14 31; Tonapetyan, 242 F.3d at 1149.

15       Plaintiff argues the ALJ "selectively" discussed the medical evidence in the record, "focusing on
16 some findings while ignoring or mischaracterizing others." Plaintiff's Opening Brief, p. 11.  By way of
17 example, plaintiff points to the ALJ's mention of some of the findings noted in a late June 2001, cervical
18 spine MRI report, but not others noted therein. Tr. 27, 462-63.  The ALJ's summary of this report, plaintiff
19 asserts, "substantially mischaracterizes" it, and thus is not supported by substantial evidence. Plaintiff's
20 Opening Brief, p. 11.  The ALJ, however, was referring to the discussion of that report made by Dr. Dennis
21 E. Smith, and not the report itself. See Tr. 26-27, 464.  In any event, the undersigned does not find the ALJ
22 "substantially mischaracterized" the MRI evidence, nor, even if the ALJ had done so, has plaintiff shown
23 how that calls into question the ALJ's entire analysis of the medical evidence in the record.

24       Plaintiff next argues that "[e]ven more significantly," nowhere in his decision did the ALJ mention
25 that she had been referred by Dr. Smith to Dr. Robert G.R. Lang, a neurosurgeon. Plaintiff's Opening Brief,
26 p. 11.  Again, however, plaintiff makes no showing as to how this impugns the ALJ's analysis of the medical
27 evidence in the record overall.  The mere fact that a claimant is referred to a neurosurgeon, while certainly
28 indicating the potential existence of a possible severe impairment, does not at all in itself indicate the

REPORT AND RECOMMENDATION
Page - 5

claimant suffers from any significant work-related limitations due to that impairment. The same is true regarding plaintiff's assertion that the ALJ failed to mention Dr. Lang recommended and then performed surgery on her spine in mid-December 2001. See Tr. 494, 510-11.

First, the surgery Dr. Lang performed occurred some two months after plaintiff was found disabled due to her age and work limitations. Thus, this report fell outside of the relevant time period the ALJ was considering with respect to this matter.[3] It is true that medical reports "containing observations made after the period for disability are relevant to assess the claimant's disability" during that period. Smith v. Bowen, 849 F.2d 1222, 1225 (9th Cir. 1988); Kemp v. Weinberger, 522 F.2d 967, 969 (9th Cir. 1975). Here though, none of Dr. Lang's diagnostic notes prior to the date surgery was performed indicated the presence of any significant work-related limitations. See Tr. 485, 491-94, 512-13. Indeed, in early January 2001, Dr. Lang found no significant nerve root impingement. Tr. 485.

More importantly, however, is the point that just because a claimant has been recommended and is a candidate for back surgery, does not in itself establish the existence of disabling pain or other symptoms. As indicated above, nowhere in Dr. Lang's pre-operative diagnostic notes does he state or find that plaintiff suffered from such an extreme condition or significant work restrictions. After the surgery was performed, furthermore, plaintiff saw significant improvement in her pain symptoms. Tr. 482-84, 486, 524. As such, the undersigned wholly rejects plaintiff's claim that the ALJ's failure to mention the surgery and referral therefor "resulted in a decision which is neither supported by substantial evidence nor free of legal error." Plaintiff's Opening Brief, p. 11.

Plaintiff next argues the ALJ failed to properly consider the November 17, 2000, statement of Dr. James Brooks that she had "anxiety/claustrophobia" for which she was prescribed Zoloft, that she had panic attacks, loss of concentration, and dizziness in confined spaces/environments, and that she had chronic fatigue secondary to her ileostomy and "caloric replacement." See Tr. 465-66. Dr. Brooks also signed his name to a document with the same date, in which a box had been checked indicating plaintiff was disabled as of June 1998, due to degenerative joint disease and ileostomy. Tr. 468. With respect to this evidence, the ALJ stated as follows:

> I accord no weight to the check block of Dr. Brooks . . . or his certification for handicap

---

[3] Plaintiff has not challenged the ALJ's decision to limit that period to September 21, 1998, to October 12, 2001.

REPORT AND RECOMMENDATION
Page - 6

> status . . . , as they are not supported by significant findings and are provided in a secondary gain context.

Tr. 25. Plaintiff argues these are not legitimate reasons for rejecting Dr. Brooks' opinion.

The undersigned agrees the ALJ's statement that Dr. Brooks' findings were provided in a secondary gain context was improper. While, as discussed below, the ALJ properly discounted plaintiff's credibility, there is no indication in the record that any of Dr. Brooks' opinons themselves were obtained for secondary gain purposes. In addition, absent "evidence of actual improprieties," the purpose for which a medical report is obtained is not a legitimate basis for rejecting it. See Lester v. Chater, 81 F.3d 821, 832 (9th Cir. 1996) ("An examining doctor's findings are entitled to no less weight when the examination is procured by the claimant than when it is obtained by the Commissioner.").

The ALJ's statement that Dr. Brooks' opinions were "not supported by significant findings," on the other hand, is a legitimate basis for rejecting those opinions. Plaintiff disagrees, asserting that Dr. Brooks mentioned that plaintiff had panic attacks, loss of concentration, and dizziness in confined spaces. While true, the undersigned cannot help but find such findings to be at most "brief, conclusory, and inadequately supported by clinical findings." Batson, 359 F.3d at 1195; Thomas, 278 F.3d at 957; Tonapetyan, 242 F.3d at 1149. The record contains no "clinical findings" by Dr. Brooks. Indeed, plaintiff herself testified that she sees Michael Myers, a physician's assistant who works under Dr. Brooks, for treatment purposes, and that she "has never seen Dr. Brooks" himself.[4] Tr. 567-68. Further, it is not improper to discount a medical opinion because it is given in a "check-off" report. See Murray v. Heckler, 722 F.2d 499, 501 (9th Cir.1983) (expressing preference for individualized medical opinions over check-off reports).

Lastly, plaintiff makes a general statement that the medical records from Dr. Lang, Dr. Smith and Mr. Myers show that she had "been having problems with her cervical spine since at least March 25, 2000, culminating in the spinal surgery performed by Dr. Lang." Plaintiff's Opening Brief, pp. 10-11. But the fact that a claimant may have a physical impairment alone is insufficient to establish disability. Matthews v. Shalala, 10 F.3d 678, 680 (9th Cir. 1993) ("The mere existence of an impairment is insufficient proof of a disability."); Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995) (mere diagnosis of impairment does not

---

[4] Plaintiff argues in her reply brief that Dr. Brooks should be accorded the deference of a treating physician because he supervised Mr. Myers, and thus "is considered a treating physician." Plaintiff's Reply Brief, p. 3. However, plaintiff provides no citation to legal authority for this proposition, nor is there any indication in the record (other than his signature on the two documents noted above) that Dr. Brooks actually "supervised" Mr. Myers in any meaningful sense for purposes of this case.

REPORT AND RECOMMENDATION
Page - 7

1  establish disability).

2  Indeed, neither Dr. Lang nor Dr. Smith found plaintiff had any significant work-related limitations.
3  See Tr. 464, 482-86, 491-94, 512-13, 524. Although Mr. Myers did opine in late June 2001, that plaintiff
4  was limited to sedentary work, he felt she would be so limited for a period of only 12 weeks. Tr. 443;
5  Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (impairment must be expected to result in death or
6  last for continuous period of not less than twelve months). In addition, Mr. Myers opined in early January
7  1999, just three months after plaintiff's amended alleged onset date of disability, that she was capable of
8  performing at the light exertional level. Tr. 288.

9  II.     The ALJ Did Not Err in Assessing Plaintiff's Credibility

10  Questions of credibility are solely within the control of the ALJ. Sample v. Schweiker, 694 F.2d
11  639, 642 (9th Cir. 1982). The court should not "second-guess" this credibility determination. Allen, 749
12  F.2d at 580. In addition, the court may not reverse a credibility determination where that determination is
13  based on contradictory or ambiguous evidence. Id. at 579. That some of the reasons for discrediting a
14  claimant's testimony should properly be discounted does not render the ALJ's determination invalid, as long
15  as that determination is supported by substantial evidence. Tonapetyan v. Halter, 242 F.3d 1144, 1148 (9th
16  Cir. 2001).

17  To reject a claimant's subjective complaints, the ALJ must provide "specific, cogent reasons for the
18  disbelief." Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1996) (citation omitted). The ALJ "must identify
19  what testimony is not credible and what evidence undermines the claimant's complaints." Id.; Dodrill v.
20  Shalala, 12 F.3d 915, 918 (9th Cir. 1993). Unless affirmative evidence shows the claimant is malingering,
21  the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing." Lester, 81 F.2d at
22  834. The evidence as a whole must support a finding of malingering. O'Donnell v. Barnhart, 318 F.3d 811,
23  818 (8th Cir. 2003).

24  In determining a claimant's credibility, the ALJ may consider "ordinary techniques of credibility
25  evaluation," such as reputation for lying, prior inconsistent statements concerning symptoms, and other
26  testimony that "appears less than candid." Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996). The ALJ
27  also may consider a claimant's work record and observations of physicians and other third parties regarding
28  the nature, onset, duration, and frequency of symptoms. Id.

The ALJ made the following determination regarding plaintiff's credibility:

> The claimant is not credible in this matter. I note the prior hearing decision that the claimant's allegations were not credible in the degree of pain she alleged, as such allegations were not supported by the medical evidence (Exhibit 3A/12-13). None of he claimant's treating or examining physicians bear witness to the excess pain the claimant alleges. The medical evidence showed no clinical signs of muscle atrophy, muscle spasm or severe muscle weakness. She was in no acute distress and, at times, she was taking no pain medications and/or ran out of medications (Exhibits 21F, 31F/9 and 15, 33F, 36F/7). Additionally, the claimant was advised to exercise and quit smoking (Exhibit 36F/5-7). At the hearing the claimant alleges an inability to lift more than five pounds due to the "flange" on her osteotomy; however, there is no opinion supporting this limitation, and it is contradicted.
>
> The claimant's activities of daily living show an ability to perform basic work activities. In July 1999 the claimant indicated she could lift ten pounds, walk a few blocks and that her sitting was no [sic] limited as long as she received periodic breaks. She was able to perform all of the activities of daily living without difficulty. She was attending school through DVR for retraining and doing well (Exhibits 21F, 27F/2, 31F/28, 53). She attends AA (Exhibit 20F/2). The claimant's own statements indicate that she cooks, shops, does house cleaning such as sweeping, vacuuming and doing the laundry, visits friends and chairs fellowship meetings (Exhibit 4E).
>
> Moreover, the record includes statements from doctors suggesting the claimant was engaging in possible malingering or misrepresentation (Exhibits 19F, 20F/4, 25F/2, 28F/6). She has an attitude (Exhibit 36F/1) and her work record is unimpressive (Exhibit 9D), which further impugns her credibility.
>
> The claimant is not otherwise credible in regards to her mental impairments. The claimant's Global Assessment of Functioning was 65 to 70 and her ability to reason, understand and to sustain concentration and persistence were intact. She had no difficulty in social interaction or in adaptation (Exhibit 20F/4). On the WAIS-R the claimant's scores revealed a Verbal IQ of 92, Performance IQ of 104 and a Full Scale IQ of 95. The claimant was able to perform simple work that was routine and repetitive (Exhibit 8F/5). The claimant's activities such as driving, doing puzzles, watches [sic] television for three hours at a time, doing paperwork for fellowship meetings and handling her own finances (Exhibits 4E-6E) all requires [sic] a lot of concentration.

Tr. 29-30. These are all valid reasons for discounting plaintiff's credibility.

Thus, for example, a determination that a claimant's complaints are "inconsistent with clinical observations" can satisfy the clear and convincing requirement. <u>Regennitter v. Commissioner of SSA</u>, 166 F.3d 1294, 1297 (9th Cir. 1998). Failure to assert a good reason for not seeking, or following a prescribed course of, treatment, or a finding that a proffered reason is not believable, also "can cast doubt on the sincerity of the claimant's pain testimony." <u>Fair v. Bowen</u>, 885 F.2d 597, 603 (9th Cir. 1989). In addition, to determine whether a claimant's symptom testimony is credible, the ALJ may consider his or her daily activities. <u>Smolen</u>, 80 F.3d at 1284. Finally, the ALJ may consider a claimant's poor work history and motivation, as well as issues of secondary gain, in rejecting symptom testimony. See <u>Thomas v. Barnhart</u>,

278 F.3d 947, 959 (9th Cir. 2002); Tidwell v. Apfel, 161 F.3d 599, 602 (9th Cir. 1998); Matney on Behalf of Matney v. Sullivan, 981 F.2d 1016, 1020 (9th Cir. 1992).

Plaintiff does not challenge the ALJ's asserted reasons for discounting her credibility. Instead, she argues the ALJ's "entire analysis" of her testimony "is tainted by his failure to even mention any of the medical opinion evidence from Dr. Lang and any of the mental health treatment records" from her mental health therapists. Plaintiff's Opening Brief, p. 14. This argument is entirely without merit. First, as discussed above, the ALJ did not err in evaluating the opinion evidence from Dr. Lang or any of the other medical sources in the record concerning plaintiff's physical impairments. Second, even if there had been some error on the part of the ALJ in failing to mention the surgery done by Dr. Lange, plaintiff wholly has failed to show how such an error undermines the entire detailed credibility analysis set forth above. Lastly, while, as discussed below, the ALJ did err in failing to discuss the records of her mental health therapists, once more, plaintiff has failed to establish the ALJ's credibility determination on the whole was erroneous due to this error.

III.   The ALJ Erred in Evaluating the Opinions of Plaintiff's Mental Health Therapists

Plaintiff argues the ALJ erred in failing to discuss any of the mental health treatment records from her mental health therapists. A mental health therapist is not an "acceptable medical source" as that term is defined in the Social Security Regulations, and therefore may be given less weight than those of acceptable medical sources. See Gomez v. Chater, 74 F.3d 967, 970-71 (9th Cir. 1996); 20 C.F.R. § 416.913(a), (d) (licensed physicians and licensed or certified psychologists are "acceptable medical sources"). Opinions of such sources instead generally are treated in the same manner as lay witness testimony. See 20 C.F.R. § 416.913(d) (Commissioner may also use evidence from other sources to show the severity of claimant's impairment(s) and how those impairments affects his or her ability to work).

Lay testimony regarding a claimant's symptoms "is competent evidence that an ALJ must take into account," unless the ALJ "expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." Lewis v. Apfel, 236 F.3d, 503, 511 (9th Cir. 2001). An ALJ may discount lay testimony if it conflicts with the medical evidence. Id.; Vincent v. Heckler, 739 F.2d 1393, 1395 (9th Cir. 1984) (proper for ALJ to discount lay testimony that conflicts with available medical evidence). In rejecting lay testimony, the ALJ need not cite the specific record as long as "arguably germane reasons" for

REPORT AND RECOMMENDATION
Page - 10

dismissing the testimony are noted, even though the ALJ does "not clearly link his determination to those reasons," and substantial evidence supports the ALJ's decision. Lewis, 236 F.3d at 512. The ALJ also may "draw inferences logically flowing from the evidence." Sample, 694 F.2d at 642.

The undersigned agrees the ALJ erred in failing to discuss at all the opinions and treatment records of plaintiff's mental health therapists. Although such opinions and records may be given less weight than those of acceptable medical sources, they must be considered by the ALJ. Defendant argues the ALJ did consider the lay witness evidence in the record, accepted it at face value, and accorded it little weight. See Tr. 30-31. It is clear, however, that the ALJ was referring to the statements of plaintiff's friends, and not the opinion and treatment records of her mental health therapists. See id. While it appears that the medical evidence in the record from those psychiatrists and psychologists (i.e., acceptable medical sources) who examined plaintiff and reviewed her records, largely contradicts the low global assessment of functioning scores and "debilitating" mental functioning limitations found by her mental health therapists (see Tr. 244-48, 259-62, 289-92, 295-98, 303-10, 321-24, 349-51, 353-60, 609-12), the undersigned is not able to say exactly how the ALJ would have treated the latter evidence.

IV.   The ALJ's Assessment of Plaintiff's Residual Functional Capacity

If a disability determination "cannot be made on the basis of medical factors alone at step three of the evaluation process," the ALJ must identify the claimant's "functional limitations and restrictions" and assess his or her "remaining capacities for work-related activities." SSR 96-8p, 1996 WL 374184 *2. A claimant's residual functional capacity assessment is used at step four to determine whether he or she can do his or her past relevant work, and at step five to determine whether he or she can do other work. Id. It thus is what the claimant "can still do despite his or her limitations." Id.

A claimant's residual functional capacity is the maximum amount of work the claimant is able to perform based on all of the relevant evidence in the record. Id. However, a claimant's inability to work must result from his or her "physical or mental impairment(s)." Id. Thus, the ALJ must consider only those limitations and restrictions "attributable to medically determinable impairments." Id. In assessing a claimant's residual functional capacity, the ALJ also is required to discuss why the claimant's "symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical or other evidence." Id. at *7.

Here, the ALJ assessed plaintiff with the following residual functional capacity:

> I find the claimant retained the residual functional capacity to perform light work or work which requires lifting and carrying 20 pounds occasionally and ten pounds frequently, sitting six hours in an eight-hour day and standing and/or walking six hours in an eight-hour day. The claimant should avoid climbing ladders, ropes and scaffolds, overhead lifting and repetitive bending and twisting. Based on the claimant's mental impairments, she should avoid close interaction with the general public.

Tr. 24.

Plaintiff argues the above assessment is erroneous, because the ALJ failed to properly consider her testimony about her symptoms and limitations, the medical evidence from Dr. Lang regarding her cervical spine degenerative disc disease, and the opinions and records of her mental health therapists. As discussed above, the ALJ did not err in assessing plaintiff's credibility or in evaluating the medical evidence in the record, including that of Dr. Lang. Again, while the objective medical evidence from the examining and non-examining psychiatrists and psychologists in the record would appear to support the ALJ's assessment of plaintiff's mental functional limitations, the undersigned is unable to say for sure how the ALJ would have treated the evidence from plaintiff's mental health therapists. For that reason alone, therefore, this matter should be remanded to the Commissioner to determine what weight to give that evidence, and what changes, if any, should be made to the residual functional capacity assessed by the ALJ.

V.  The ALJ's Step Five Analysis

If a claimant cannot perform his or her past relevant work, at step five of the disability evaluation process the ALJ must show there are a significant number of jobs in the national economy the claimant is able to do. Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999); 20 C.F.R. [§ 404.1520(d), (e)][,] [§ 416.920(d), (e)]. The ALJ can do this through the testimony of a vocational expert or by reference to the Commissioner's Medical-Vocational Guidelines (the "Grids"). Tackett, 180 F.3d at 1100-1101; Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2000).

An ALJ's findings will be upheld if the weight of the medical evidence supports the hypothetical posed by the ALJ. Martinez v. Heckler, 807 F.2d 771, 774 (9th Cir. 1987); Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir. 1984). The vocational expert's testimony therefore must be reliable in light of the medical evidence to qualify as substantial evidence. Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988). Accordingly, the ALJ's description of the claimant's disability "must be accurate, detailed, and supported by the medical record." Embrey, 849 F.2d at 422 (citations omitted). The ALJ, however, may omit from that

1  description those limitations he or she finds do not exist. <u>Rollins v. Massanari</u>, 261 F.3d 853, 857 (9th Cir.
2  2001).

3  Here, the ALJ posed a hypothetical question to the vocational expert that contained substantially the
4  same limitations as were in the ALJ's assessment of plaintiff's residual functional capacity. Tr. 619.  In
5  response to the hypothetical question, the vocational expert testified that plaintiff could perform the jobs of
6  small parts assembler and agriculture sorter. Tr. 619-20.  Based on the vocational expert's testimony, the
7  ALJ found plaintiff was capable of making an adjustment to other jobs existing in significant numbers in the
8  national economy. Tr. 33.

9  Plaintiff argues the ALJ's hypothetical question was unreliable, because it did not include all of the
10 limitations she described in her testimony, which were consistent with the medical records from Dr. Smith,
11 Dr. Lang, Mr. Myers and her mental health treatment specialists.  Once more, as discussed above, the ALJ
12 did not err in assessing plaintiff's credibility or in evaluating the medical evidence in the record regarding
13 her physical impairments, including that of Dr. Smith, Dr. Lang and Mr. Myers.  However, because the ALJ
14 did err in evaluating the evidence from plaintiff's mental health therapists, and because this matter is being
15 remanded solely to re-evaluate this evidence in light of the medical and other evidence in the record as a
16 whole, on remand the Commissioner further shall determine whether any additional limitations should have
17 been included in the hypothetical question posed to the vocational expert as well.

18 Plaintiff also argues that the evidence in the record, when "considered in its entirety, can reasonably
19 only support a finding that" she "was limited to at most sedentary exertion between September 21, 1998
20 and October 11, 2001." Plaintiff's Opening Brief, p. 17.  Thus, plaintiff asserts, given her age, education
21 and lack of transferable skills, the ALJ was required to find her disabled under 20 C.F.R. Part 404, Subpart
22 P, Appendix 2, § 201.14.  As discussed above, however, plaintiff has failed to show that the ALJ erred in
23 evaluating the medical evidence in the record regarding her physical impairments and limitations.  As such,
24 plaintiff's argument is without merit.

25 VI.   <u>This Matter Should Be Remanded for Further Administrative Proceedings</u>

26 The Court may remand this case "either for additional evidence and findings or to award benefits."
27 <u>Smolen</u>, 80 F.3d at 1292.  Generally, when the Court reverses an ALJ's decision, "the proper course,
28 except in rare circumstances, is to remand to the agency for additional investigation or explanation."

REPORT AND RECOMMENDATION
Page - 13

Benecke v. Barnhart, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted). Thus, it is "the unusual case in which it is clear from the record that the claimant is unable to perform gainful employment in the national economy," that "remand for an immediate award of benefits is appropriate." Id.

Benefits may be awarded where "the record has been fully developed" and "further administrative proceedings would serve no useful purpose." Smolen, 80 F.3d at 1292; Holohan v. Massanari, 246 F.3d 1195, 1210 (9th Cir. 2001). Specifically, benefits should be awarded where:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting [the claimant's] evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

Smolen, 80 F.3d 1273 at 1292; McCartey v. Massanari, 298 F.3d 1072, 1076-77 (9th Cir. 2002). Because issues still remain with respect whether the evidence in the record from plaintiff's mental health therapists establish the presence of limitations greater than those found by the ALJ during the relevant time period, this matter should be remanded to the Commissioner for further administrative proceedings. Specifically, the undersigned finds remand is appropriate only for the purpose of evaluating that evidence in light of the medical and other evidence contained in the record as a whole.[5]

## CONCLUSION

Based on the foregoing discussion, the Court should find the ALJ improperly evaluated the lay witness evidence in the record, and thus erred in concluding plaintiff was not disabled. The undersigned, therefore, recommends the Court reverse the ALJ's decision and remand this matter to the Commissioner for further administrative proceedings in accordance with the findings contained herein.

---

[5] Plaintiff argues Schnieder v. Commissioner of the Social Security Administration, 223 F.3d 968 (9th Cir. 2000), requires that lay evidence be credited as true when an ALJ fails to give germane reasons for rejecting such evidence. Plaintiff, however, overstates the holding in Schnieder. What the Ninth Circuit actually held in Schnieder was that when the lay evidence in that case was "given the effect required by the federal regulations," it became clear the severity of the plaintiff's functional limitations was sufficient to meet or equal a listed impairment. Schnieder, 223 F.3d at 976. In so finding, the Court of Appeals noted that the record contained five uncontradicted letters from lay witnesses showing that the plaintiff suffered from significant work-related limitations. Id. at 975-76. Thus, it is not clear that Schnieder stands for the broad proposition plaintiff contends it does.

Indeed, Schnieder is wholly distinguishable from this case on its facts. As discussed above, most of the medical and other evidence in the record would seem to support the ALJ's findings regarding plaintiff's mental functional limitations. Thus, this matter is being remanded solely to re-evaluate the opinions and records of her mental health therapists in light of that evidence. Further, where, as here, the ALJ is not required to find the claimant disabled on crediting of evidence, this constitutes an outstanding issue that must be resolved. Bunnell v. Barnhart, 336 F.3d 1112, 1116 (9th Cir. 2003). In addition, in cases such as this, "where the vocational expert has failed to address a claimant's limitations as established by improperly discredited evidence," the Ninth Circuit "consistently [has] remanded for further proceedings rather than payment of benefits." Bunnell, 336 F.3d at 1116.

REPORT AND RECOMMENDATION
Page - 14

1     Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 72(b), the parties shall have ten (10) days from service of this Report and Recommendation to file written objections thereto. See also Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of appeal. Thomas v. Arn, 474 U.S. 140 (1985). Accommodating the time limit imposed by Fed. R. Civ. P. 72(b), the clerk is directed set this matter for consideration on **June 9, 2006**, as noted in the caption.

    DATED this 10th day of May, 2006.

*/s/ Karen L. Strombom*
Karen L. Strombom
United States Magistrate Judge

REPORT AND RECOMMENDATION
Page - 15